IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN LORENZO,**<br>**Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **UPPER HANOVER TOWNSHIP, et al.**<br>**Defendants.** | **NO.  22-2023** |

## MEMORANDUM

**HODGE, J.**                                                                       **April 9, 2024**

## I.      INTRODUCTION

This case involves allegations of interference with the sale of Plaintiff John Lorenzo's ("Plaintiff" or "Lorenzo") residential property in Upper Hanover Township. Before the Court are Defendants Troy and Tracey Heuer's (the "Heuers") Motion to Dismiss (ECF No. 13); Defendant Upper Hanover Township's (the "Township") Motion to Dismiss (ECF No. 17); and Plaintiff's Motion to Extend Time for Service of Process (ECF No. 22).  For the reasons discussed herein, Lorenzo's Motion is denied; the Heuers' Motion is granted without prejudice; and the Township's Motion is granted with prejudice.

## II.     BACKGROUND

### A.      Factual Background

Lorenzo brought the instant Complaint against Upper Hanover Township, Steven Rothenberger, individually and in his official capacity as a supervisor of Upper Hanover Township, and Troy and Tracey Heuer (collectively, "Defendants"). Plaintiff filed a Complaint comprised of five counts, alleging tortious interference with prospective contractual relations (Count I), slander of title (Count II), unconstitutional retaliation under the Fifth Amendment

(Count III), a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count IV), and civil conspiracy (Count V).

The allegations in Plaintiff's Complaint relate to a parcel of real estate in Montgomery County that Plaintiff purchased on March 16, 2000[1] (the "Lorenzo Property"). (ECF No. 1 at 2.) Plaintiff alleges that at some point after acquiring the parcel, a real estate developer working with Upper Hanover Township ("the Township") began planning the construction of a development located across from the Lorenzo Property on Route 663. (*Id.*) As part of the development project, the Township allegedly sought to create a new intersection on the portion of Route 663 directly adjacent to the Lorenzo Property. (*Id.*) To create the intersection, Plaintiff alleges, the Pennsylvania Department of Transportation ("PennDOT") informed the Township that it would need to construct a new road ("Connecting Road") which would adjoin Route 663, a limited access highway, to Quakertown Road. (*Id.*)

Plaintiff's Complaint alleges that PennDOT advised the Township to acquire easements on the Lorenzo Property and the neighboring property owned by the Heuers ("Heuer Property").[2] (ECF No. 1 at 3.) In February 2008, Plaintiff alleges the Township offered him $14,000.00 for the necessary easement. (*Id.*) Plaintiff rejected the offer, alleging the offered sum was "grossly inadequate" and "significantly less than the fair market value of the easement." (*Id.*) One month later, on March 5, 2008, Plaintiff alleges that the Heuers granted the Township an easement on the portion of their property necessary for the Connecting Road. (*Id.*) Three months later, on or about

---

[1] The "Lorenzo Property" is identified by the County as Montgomery County Parcel ID No. 57-00-01014-00-9. (ECF No. 1 at 2.)

[2] The Heuer Property is identified as Montgomery County Parcel ID No. 57-00-01012-002.

June 10, 2008, "the Township enacted an ordinance, that adopted an 'official map'" reflecting the location of the Connecting Road. (*Id.*)

Plaintiff alleges that he has unsuccessfully attempted to sell the Lorenzo Property a number of times since the enactment of the Township's ordinance. (ECF No. 1 at 3.) Plaintiff alleges that each time he has attempted to list his property for sale, all Defendants, and in particular Defendant Rothenberger, have interfered with his ability to realize the Lorenzo Property's fair market value by "contact[ing] Lorenzo's listing agent and/or potential buyers" and "tell[ing] them not to buy the Lorenzo Property because the Defendants were the 'only buyer[s]' for the property." (ECF No. 1 at 3-4.) Plaintiff further alleges that Defendant Rothenberger, who was both a real estate agent for the Heuers and a member of the Upper Hanover Township Board of Supervisors, told prospective buyers that the Lorenzo Property was "worthless" as a means of interfering with Plaintiff's potential sales. (ECF No. 1 at 3, 5.)

Plaintiff's Complaint alleges that while Defendants interfered with his prospective sales to third party developers, Defendant Rothenberger also made "several offers to purchase the property on behalf of the Heuers," at a price "grossly inadequate compared to the fair market value of the Lorenzo Property." (ECF No. 1 at 4.) Plaintiff also alleges that Rothenberger and the Township "conspired to exclude him" from "every Township meeting regarding his property and [] surrounding developments." (ECF No. 1 at 7.) Plaintiff describes this conduct as a "pattern of extortion under color of official right," to "force [him]" to sell the Lorenzo Property to either the Heuers or the Township "at a price grossly below fair market value." (ECF No. 1 at 8-9.) Plaintiff claims this interference with his attempted sales caused damages by preventing him from realizing

any economic benefit on the Lorenzo Property, including accruing interest on the value of the property. (ECF No. 1 at 5.)[3]

### B.       Procedural History

Plaintiff initiated this case by filing a complaint on May 24, 2022 in this judicial district, naming as Defendants Upper Hanover Township, Steven Rothenberger, both individually and in his official capacity as a member of the Township's Board of Supervisors, and the Heuers. (ECF No. 1.) The following day, May 25, 2022, the Court Clerk issued summons to Plaintiff for service on each defendant. (ECF No. 22 at 5; ECF No. 2 at 1-2.)[4] Thereafter, on or about October 12, 2022, Process Server Megan Kramer served the summons and Complaint upon Tracey Heuer at the Heuers' residence and left a copy for Troy Heuer. (ECF No. 25-1 at 2-3; ECF No 4; ECF No. 5.)

On November 2, 2022, the Heuers moved this Court to dismiss Plaintiff's Complaint. (ECF No. 13.) In their Motion, the Heuers raised three primary arguments: first, that Plaintiff failed to timely serve them; second, that Plaintiff failed to state a claim upon which relief could be granted; and third, that this Court lacked subject matter jurisdiction over the case. (ECF No. 24 at 2.)  On November 15, 2022, the Township similarly moved to dismiss Plaintiff's Complaint, advancing the argument that Plaintiff failed to state a claim upon which relief could be granted. (ECF No.

---

[3] In January 2022, Plaintiff sent a letter to the Township "advising them of the situation such as to encourage them to settle the matter." (ECF No. 1 at 4.) In response, the Township advised Plaintiff that it had "no need for the Lorenzo Property" and was "uninterested" in purchasing it. (*Id.*)

[4] The only Defendants who raise an issue with Plaintiff's subsequent service are the Heuers, who advanced in their Motion to Dismiss an argument that Plaintiff's service upon them was insufficient or untimely. (ECF No. 24.) Because the other Defendants (Rothenberger and the Township) do not raise a service-related argument, the primary relevant procedural background is exclusive to the Heuers on this issue.

17.) In the interim, on November 14, 2022, Defendant Rothenberger filed an Answer to Plaintiff's

Complaint with affirmative defenses. (ECF No. 16.)

In response to the Heuers' service argument, on December 16, 2022, Plaintiff filed a

Motion asking for a *nunc pro tunc* extension of time to serve the Complaint, pursuant to F.R.C.P.

6(b)(1)(B), to ameliorate the alleged service-related defects raised by the Heuers. (ECF No. 22.)[5]

That same day, Plaintiff also filed a Response in Opposition to the Heuers' Motion to Dismiss.

(ECF No. 21.) Thereafter, on December 20, 2022, Plaintiff filed a Response in Opposition to the

Township's Motion to Dismiss. (ECF No. 23.)[6]

## III.    LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court

must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." *Id*. at 679. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, a

complaint lacks facial plausibility when it offers "labels and conclusions" or "a formalistic

recitation of the elements of a cause of action." *Id.* at 678. Where a complaint merely offers "'naked

---

[5] The Heuers filed a Response in Opposition to this motion on December 30, 2022. (ECF No. 26.)
Plaintiff filed a Sur-Reply opposing the Heuers' Response on January 15, 2023. (ECF No. 28.)

[6] The Township responded to Plaintiff on January 9, 2023, with a Reply in support of its Motion
to Dismiss. (ECF No. 27.) Plaintiff filed a Sur-Reply opposing the Township's response on January
24, 2023. (ECF No. 29.)

assertion[s]' devoid of 'further factual enhancement,'" Rule 12(b)(6) directs the Court to dismiss

the claim as a matter of law. *Id.* (citing *Twombly*, 550 U.S. at 557).

## IV.     DISCUSSION

The Heuers and Township have each filed separate Motions to Dismiss, which the Court

now addresses in turn.

### A.     The Heuers' Motion to Dismiss and Lorenzo's Motion to Extend Time in Response

The Heuers raise the issue of untimely service in their Motion to Dismiss, arguing that the

Complaint must be dismissed under Rule 4(m) for failure to timely serve the Complaint on the

Heuers. (ECF No. 13-1 at 3-4.) Plaintiff responded in his Motion to Extend Time that the late

service should be excused under a theory of excusable neglect. (ECF No. 22 at 5.)

Under Rule 4(m),

> [i]f a defendant is not served within 90 days after the complaint is filed, the court . . .must dismiss the action without prejudice . . . .  or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). A District Court must extend the time for service where a plaintiff

demonstrates good cause for the failure to timely serve a defendant. *Edwards v. Hillman Grp. Co.*,

847 F. App'x 112, 114 (3d Cir. 2021). The Third Circuit has previously equated "the scope of the

'good cause' exception . . . with the concept of 'excusable neglect' of Fed. R. Civ. P. 6(b)(2)."

*McCrae v. KLLM Inc.*, 89 F. App'x 361, 364 (3d Cir. 2004) (citing *Petrucelli v. Bohringer &*

*Ratzinger*, 46 F.3d 1298, 1312 (3d Cir. 1995).  Excusable neglect requires "a demonstration of

good faith on the part of the party seeking an enlargement and some reasonable basis for

noncompliance within the time specified in the rules." *Id.* (internal quotation marks omitted).

However, "neither half-hearted efforts prior to the deadline nor inadvertence by counsel constitutes good cause." *Gish v. AG United States*, 604 F. App/x 119, 121 (3d Cir. 2015) (citing *Petrucelli*, 46 F.3d at 1307). "'If . . . good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service.'" *Edwards*, 847 F. App'x at 114. (quoting *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)). "In determining whether or not to grant a discretionary extension, courts may consider: (1) actual notice of the legal action; (2) prejudice to the defendant; (3) the statute of limitations on the underlying causes of action; (4) the conduct of the defendant; (5) whether the plaintiff is represented by counsel; and (6) any other factor that may be relevant." *Carroll v. Richardson*, No. 16-1406, 2021 U.S. Dist. LEXIS 44320, at *18 (E.D. Pa. Mar. 9, 2021).

Lorenzo commenced this action on May 24, 2022 and therefore had until August 23, 2022 to serve the Complaint and summons. (ECF No. 13-1 at 2-3; ECF No. 25-1 at 2-3.) Due to a "miscommunication. . . . between a legal assistant and a junior attorney" the Complaint was not served until October 12, 2023. (ECF No. 22 at 6.)  Plaintiff then waited until December 16, 2023 to request an extension, nearly four months after the service deadline, and one and a half months after the Heuers filed their Motion to Dismiss. (ECF No. 22; ECF No. 13.) This oversight by Plaintiffs' counsel is insufficient for a finding of "good cause" or "excusable neglect."   As such, the Court turns to the discretionary factors.

There is no showing that the Heuers had "actual notice of the legal action," although Plaintiff indicates that in January[7] of 2022, Plaintiffs' Counsel "sent a letter to the Defendants advising them of the situation such as to encourage them to settle the matter." (ECF No. 1 at 4.) The Heuers argue that they are prejudiced by Plaintiff's "failure to diligently pursue prosecution

---

[7] The Complaint fails to include a date upon which the letter was sent. (ECF No. 1 at 4.)

of [the] Complaint or adhere to deadlines[8] in this matter." (ECF No. 24 at 4.)  There is no indication

that the Heuers were evading service or concealing a defect in service. Further, Plaintiff is

represented by counsel and is not appearing *pro se*, which would allow the Court to offer a greater

degree of "leniency" as to the service deadlines. *See Carroll*, No. 16-1406, 2021 U.S. Dist. LEXIS

44320, at *11. While this Court "generally grant[s] extensions" because we "prefer to address the

merits" of a case, in certain circumstances, the factors weigh in favor of denying such a request.

*Carroll*, No. 16-1406, 2021 U.S. Dist. LEXIS 44320, at *1. This is one such circumstance. Thus,

the factors in this instance weigh in favor of granting the Heuer's Motion to Dismiss pursuant to

F.R.C.P. 4(m) for untimely service without good cause or other discretionary, supporting facts.

Accordingly, Lorenzo's Motion to Extend Time is denied; the Heuers' Motion to Dismiss is

granted; and the Complaint is dismissed **without prejudice** as to the Heuers.

### B.      The Township's Motion to Dismiss

In his Response in Opposition to the Township's Motion to Dismiss, Plaintiff withdraws

his claims against the Township as to Count I, Intentional Interference with Prospective

Contractual Relations; Count II, Slander of Title; and Count IV, Civil Rico. (ECF No. 23 at 4, 11.)

As such, the Court's analysis of the Township's Motion to Dismiss contemplates only the

remaining Counts: Count III, alleging violations of 42 U.S.C. § 1983, and V, alleging conspiracy.

#### 1.      Count III – Fifth Amendment Retaliation Under 42 U.S.C. § 1983

In Count III of the Complaint, Plaintiff asserts a claim for Fifth Amendment retaliation

against the Township, pursuant to 42 U.S.C. § 1983. (ECF No. 1 at 6-7.)   A governmental entity

---

[8] In addition to failing to timely serve the Complaint and timely request an extension to do so,
Plaintiff also filed its Response in Opposition to the Heuer's Motion to Dismiss 44 days after the
Heuers filed their Motion, without requesting an extension to do so. (ECF No. 21; ECF No. 24 at
4); *see* L.R. Civ. P. 7.1(c).

"can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers" or where a constitutional deprivation was caused by a "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).

In *Monell*, the Supreme Court held that a "municipality is only liable when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation or decision either formally adopted or informally adopted through custom, actually caused the alleged constitutional transgression." 436 U.S. at 691; *see also id.* at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). In other words, to state a claim under *Monell*, "a plaintiff must establish that

> (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights;
> (2) the municipality acted deliberately and was the moving force behind the deprivation; and
> (3) the plaintiff's injuries were caused by the identified policy or custom.

*Ekwunife v. City of Phila.*, 245 F.Supp.3d 660, 673–74 (E.D. Pa. 2017) (citing *Monell*, 436 U.S. at 692–94). To appropriately plead a *Monell* claim, Plaintiff must identify a policy or custom and then "plead facts demonstrating a 'direct causal link between [the] policy or custom and the alleged constitutional deprivation.'" *Id.* at 675 (quoting *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007)). "A policy is made when a decisionmaker possessing the final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict [and a] custom is an act that has not been formally approved by an appropriate decisionmaker, but

that is so widespread as to have the force of law." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotes and citations omitted).

To satisfy the first prong of the *Monell* test and survive a motion to dismiss, Plaintiff's Complaint must allege "the municipality had a policy or custom that deprived the plaintiff of his constitutional rights." *Ekwunife*, 245 F.Supp.3d at 674 (citing *Monell*, 436 U.S. at 692–94). This requires Plaintiff to plead "specific factual allegations referencing the conduct, time, place, and persons responsible for official municipal policy or custom." *Psota v. New Hanover Township*, Civ. No. 20-5004, 2021 WL 6136930, at *20 (E.D. Pa. 2021) (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). The Township argues that the Complaint fails to identify a municipal policy or custom as required under *Monell*. (ECF No. 27 at 2-3). Plaintiff contends in response that "PennDOT advis[ing] the Township to acquire" an easement on the Lorenzo Property "as part of a development project," and the Township thereafter "enact[ing] an ordinance that adopted an official map confirming the location of the Connector Road" is the policy at issue. (ECF No 1 at 3; ECF No. 29 at 1-2). The Court is not persuaded that, first, an applicable policy exists based on the facts pled and, second, even if the Court were to consider the Township's new map to be a "policy" for purposes of *Monell*, it certainly was not the cause of the alleged constitutional deprivation.

Indeed, under *Monell*, identifying any policy or ordinance alone is not enough; rather, the allegations must tend to show a "direct causal link between [the] municipal policy . . . . and the alleged constitutional deprivation to ground municipal liability." *Jiminez*, 503 F.3d 247, 249 (3d Cir. 2007). Lorenzo argues that after he refused and rejected the Township's offer to acquire an easement on his property, and after he rejected Rothenberger's offer to list the Lorenzo Property for sale, "Rothenberger, on behalf of the Township, began a non-stop campaign of retaliation by

scaring away potential buyers, spreading falsehoods, and otherwise interfering with potential sales." (ECF No. 1 at 7.) Even taking those allegations as true, the Complaint fails to allege any facts tending to show that the Township's ordinance adopting the new official map was what caused or required Rothenberger and the other Defendants to engage in the alleged retaliation.

Plaintiff further argues that because Defendant Rothenberger was a Township Supervisor, Rothenberger was a "final decisionmaker" and therefore held the "policymaking power" for the Township. (ECF No. 23 at 7-8.) This argument is also unavailing. Alleging a case of retaliation against an individual township supervisor is not sufficient to hold a township itself liable under Section 1983. *See Colburn v. Upper Darby Twp.,* 946 F.2d 1017, 1027 (3d Cir.1991) ("The law is clear that liability will not be imposed under § 1983 on a respondeat superior or vicarious liability theory.")

Taking the facts alleged in the Complaint as true, the Court finds that Lorenzo has failed to identify any policy or custom that could have caused the alleged constitutional harm, as required under the first element of the *Monell* test. The Complaint fails to state a cognizable Section 1983 claim against the Township. As such, Defendant Township's Motion to Dismiss is granted as to Count III.

### 2.    Count V – Conspiracy

Lorenzo also asserts a claim for civil conspiracy, alleging the Defendants "conspired to force [him] to sell the Lorenzo Property" for a price below market value, and that the Defendants "acted in concert in an attempt to unlawfully interfere with Plaintiff's property rights and [] prospective contractual relations." (ECF No. 1 at 9.) Putting aside the conclusory nature of these allegations, Plaintiff has not pled a plausible claim.

Under Pennsylvania law, "[a] civil conspiracy is a [1] combination or agreement [2] between two or more persons [3] to commit an unlawful act or a lawful act by unlawful means." *Ching-Luo v. Owen J. Roberts Sch. Dist.*, No. 19-3997, 2022 U.S. App. LEXIS 26971, at *7 (3d Cir. Sept. 27, 2022) (per curiam) (citation and internal quotation omitted); *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023). To establish the existence of a civil conspiracy, "[t]he plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Alexander v. Eaton*, No. 5:22-cv-05066-JMG, 2024 U.S. Dist. LEXIS 16612, at *6 (E.D. Pa. Jan. 31, 2024) (citation omitted). And, importantly, "civil conspiracy is not a separate cause of action but instead requires an underlying tort." *Frazier v. Synovus Fin. Corp.*, No. 23-3698, 2023 U.S. Dist. LEXIS 177458, at *17 (E.D. Pa. Sep. 28, 2023) (citing *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 405-07 (3d Cir. 2000)). Therefore, a decision on "civil conspiracy should yield to a finding for the defendant on the underlying tort because the cause of action is wholly subordinate to the underlying tort's existence." *Id*.

Because Plaintiff has withdrawn Counts I, II, and IV against the Township, and the Court is dismissing Count III against the Township, there is no underlying tort on which to base a civil conspiracy claim. *See Leboon v. Equifax Info. Servs., LLC*, No. 18-1978, 2018 U.S. Dist. LEXIS 174022, 2018 WL 4924170, at *3 (E.D. Pa. Oct. 10, 2018) (dismissing conspiracy claim because court dismissed FCRA claim and common law negligence claim, and therefore, there was no underlying tort on which to base his civil conspiracy claim). For these reasons, the Township's Motion to Dismiss is granted as to Plaintiff's claim for civil conspiracy under Count V of the Complaint.

## V.      CONCLUSION

For the reasons set forth herein, Lorezno's Motion to Extend Time for Service of Process (ECF No. 22) is denied; the Heuers' Motion to Dismiss (ECF No. 13) is granted without prejudice; and the Township's Motion to Dismiss (ECF No. 17) is granted with prejudice. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**